ROBERT S. BREWER, JR.
United States Attorney
MELANIE K. PIERSON
Assistant U.S. Attorney
California Bar No. 112520
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0450
Email:  Melanie.Pierson@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br> JOSE MANCILLAS PONCE,<br><br>                Defendant. | Case No. 20cr2845-CAB<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS;**<br>  **1. TO COMPEL DISCOVERY**<br>  **2. TO PRESERVE EVIDENCE**<br>  **3. TO FILE FURTHER MOTIONS**<br><br>DATE: November 13, 2020<br>TIME:  10:30 a.m. |

COMES NOW the plaintiff, United States of America, by and through its counsel, United States Attorney Robert S. Brewer, Jr., and Assistant U.S. Attorney Melanie K. Pierson, and hereby files its Response and Opposition to Defendant's Motion to Compel Discovery.  Said response is based on the files and records of the case.


DATED:November 9, 2020          Respectfully submitted,

                                ROBERT S. BREWER, JR.
                                United States Attorney

                                /s/Melanie K. Pierson
                                Assistant United States Attorney

I.
STATEMENT OF THE CASE

On September 9, 2020, a complaint was filed in the Southern District of California, charging the defendant with Smuggling, in violation of Title 18, United States Code, Section 545. The defendant appeared, pursuant to a Notice to Appear, was arraigned on September 10, 2020, and entered a not guilty plea.

On October 8, 2020, the defendant waived indictment and was arraigned on an Information with the same charge, and again pled not guilty. A hearing on all motions was set for November 13, 2020.

On November 6, 2020, the defendant filed a motion to compel discovery. The United States responds to those motions herein.

II.

STATEMENT OF FACTS

At approximately 5:53 p.m. on September 3, 2020, Jose Guadalupe MANCILLAS Ponce entered the United States at the Otay Mesa Port of Entry as the driver and sole occupant of a white Lexus. MANCILLAS was asked if he had anything to declare, and he twice responded that he had nothing to declare. While inspecting the vehicle and its contents, the CBP Officer located bottles of pesticides concealed beneath clothing inside of a black duffle bag. Upon further inspection, the CBP Officer located additional bottles of pesticides in brown cardboard boxes beneath a black mesh covering behind the driver and passenger seats. The CBP Officer asked MANCILLAS if the bottles were pesticides, and MANCILLAS responded by saying "no, they are to help plants grow" and "I am growing tomatoes and

chili plants." The CBP Officer referred the vehicle to secondary for further inspection. In the secondary inspection area, a CBP Officer located and seized from the vehicle: one 950 milliliter bottle of "Qufuran", ten 1-liter bottles of "Metaldane 600", twenty-three 1-liter bottles of "Biozyme TF", and seven 1-liter bottles of "Lorsban 480EM".

After being advised of his Constitutional rights and waiving his rights in writing, MANCILLAS stated that he went to Mexico to visit his son. He stated that a friend of his asked him to bring the pesticides to the U.S. from Mexico. MANCILLAS also stated that this friend has a ranch in Perris, CA, where he grows persimmons and peaches, and MANCILLAS claimed that this is what the pesticides he was transporting were going to be used for.

According to the label, "Qufuran" contains the active ingredient carbofuran. According to the label, "Metaldane 600" contains the active ingredient methamidophos. In the United States, both carbofuran and methamidophos are cancelled pesticides, and may not be imported, distributed or sold in this country. 7 U.S.C. §136j(a)(1)(A).

According to the label, "Lorsban 480EM" contains the active ingredient chlorpyrifos. In the United States, chlorpyrifos is a restricted use pesticide for most concentrations including 44.7% and 42.5%. The Lorsban 480EM MANCILLAS had in his possession had a chlorpyrifos concentration of 44.5%, which is similar to these restricted use products. Federal regulations limit the sale and use of restricted-use pesticides to applicators certified by a program approved by the EPA, who have received training in mitigating the dangers of such

pesticides, and persons under their direct supervision.  A search of the database of certified pesticide applicators in California revealed that MANCILLAS holds no such certification.

According to the label, "Byozyme TF" contains a fertilizer mix of manganese, magnesium, zinc, boron, sulfur, micronutrients, dilutes, conditioners, and the active ingredients gibberellin, auxin, and cytokinin. In the United States, the plant growth regulators gibberellin, auxin, and cytokinin are regulated as pesticides, and must be registered with the EPA. Only pesticides registered with the EPA may be imported or sold in the United States.  7 U.S.C. §136o(c).  All pesticides intended for use in the United States must bear their EPA registration number on their labels, preceded by the phrase "EPA Registration No." or "EPA Reg. No." 40 C.F.R. §156.10(e).  In addition, all required information on a label must appear in the English language. 40 C.F.R. §156.10(a)(3).  The containers of pesticide found with MANCILLAS were labeled only in Spanish and bore no EPA registration numbers.

The lawful importation of pesticides into the United States requires a Notice of Arrival to be provided to U.S. Customs, pursuant to 19 C.F.R. §12.112.  MANCILLAS provided no such Notice of Arrival for the pesticides in this case.

//

//

//

//

III

POINTS AND AUTHORITIES

A. THE GOVERNMENT HAS AND WILL COMPLY WITH RULE 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.  ANY ADDITIONAL DISCOVERY DEMANDS OF THE DEFENDANT SHOULD BE DENIED.

1. Status of Discovery

On September 21, 2020, the government made available approximately 145 pages of discovery, and a disc containing the recorded statements of defendant. The initial discovery included the CBP reports of the primary and secondary officers, copies of the documents seized from the defendant, the notes of the interviewing agents, the signed advisement of rights forms, the seizure forms, the photographs taken at the Port of Entry, the vehicle registration, a summary of his criminal history, the referral slip, and the recorded interview of the defendant at the Port of Entry.  On September 25, 2020, the defendant was provided with the report of the case agent relating to events at the border.

The defendant consented to a search his phone.  When the results of the search are available (which could be weeks or months, depending on how long it takes to unlock the phone), they will be disclosed.  The videos from the primary and secondary inspections at the Port of Entry have been requested and will be disclosed as soon as they are received.

To the extent that any evidence of prior similar acts exists, it may be found in the statements of the defendant and or in the data downloaded from the phone.

This is a reactive case originating from the seizure at the Port of Entry.  Accordingly, there are no records of prior investigation of

the defendant for this offense.  The government has not conducted any scientific testing in this case (nor is any anticipated) and does not anticipate the need for expert testimony.  The government will make the appropriate inquiries regarding potential impeachment of its witnesses and disclose all *Giglio* and *Henthorn* materials one week before trial.

The government, to date, has provided discovery consisting of approximately 145 pages of documents and a recording. The discovery provided to date is in excess of that required by Rule 16 of the Federal Rules of Criminal Procedure. The Government will continue to comply with the rules concerning discovery.  The defendant's specific requests are discussed below.

    2. <u>The Government Has Already Disclosed Information Subject to Disclosure under Rule 16(a)(1)(A)and (B) of the Federal Rules of Criminal Procedure.</u>

The Government has already disclosed the written and recorded statements of the defendant, as well as the substance of any relevant oral statements they made in response to questions by Government agents.

The defendant is not entitled to summaries of oral statements of the defendant made to persons not known by her to be government agents, and the memorialization of any such statements in a written report does not make them discoverable as "written" statements of the defendants. <u>United States v. Hoffman</u>, 794 F.2d 1429, 1432, n.4 (9th Cir.1986).

The videos relating to the defendant's detention at the Port of Entry will be produced as soon as they are received.  He was not arrested but was given a Notice to Appear.  The notes of the interviewing agents have been produced.

### 3. The Government Will Comply with Rule 16(a)(1)(D).

The Government has provided the criminal history report for the defendant. Once the witnesses the government intends to call in its case in chief are identified, records of any evidence of prior convictions for those individuals will be disclosed.

The Government is well aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment, as well as its duty under Giglio v. United States, 405 U.S. 150 (1972) to provide information on any benefits provided to Government witnesses in exchange for their testimony and impeachment material. The Government agrees to provide this information at least one week prior to trial, after all of the trial witnesses have been identified.

### 4. The Government Will Comply with Rule 16(a)(1)(E).

The Government will permit the defendant to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings, or places, or portions thereof, which are within the possession, custody, or control of the Government, and which are material to the preparation of the defendant's defense or are intended for use by the Government as evidence-in-chief at trial or were obtained from or belong to the defendant, and agrees to preserve such evidence during the pendency of this proceeding.

The defendant is not entitled to all evidence known or believed to exist which is, or may be favorable to the accused, or which pertains

to the credibility of the Government's case.  As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> "[T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id., 611 F.2d at 774-775 (citations omitted).

See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the Government not required to create exculpatory material that does not exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure).  All physical evidence collected to date will be preserved.  The photographs taken at the Port of Entry have been disclosed.

   5.   The Government Will Comply with Rule 16(a)(1)(F)

No scientific testing of the pesticides has been performed.  To the extent such evidence is created in the future, the Government will provide the defendant with the results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession of the Government, and will continue to provide any further such reports that by the exercise of due diligence may become known to the attorney for the Government and are material to the preparation of the defense or are intended for use by the Government as evidence-in-chief at the trial.

//

//

### 6. The Government Will Comply with Rule 16(a)(1)(G)

No reports of experts have been prepared to date. The Government will provide any summaries of expert testimony as such evidence is identified as the case proceeds to trial, but no later than two weeks prior to trial.

### 6. Jencks Material

Production of witness statements is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies on direct examination. United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir.), cert. denied, 454 U.S. 902 (1981). Indeed, even material believed to be exculpatory and therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). This is the law of the Ninth Circuit, although the defendant has provided contrary case law from district courts outside of this circuit.

As a practical matter, the government has disclosed the reports of the investigation, so advance Jencks material has already been provided.

### 7. Prior Similar Act Evidence

To the extent that the government has evidence currently in its possession that might be argued to be admissible under Rule 404(b) relating to instances of the illegal imports of pesticides, it has been disclosed, or will be disclosed. Such evidence would be found in the

statements of the defendant or may also be found information downloaded from the defendant's phone.

8. <u>Henthorn Material</u>

The government will conduct a review of the personnel files of the federal agents involved in the case, and any impeachment material falling within the purview of <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.1991) will be disclosed.

9. <u>Impeachment Information</u>

The defendant may request various categories of impeachment evidence, including bias or motive to lie, evidence of criminal investigation or convictions, and evidence affecting perception. The government has disclosed much of the evidence currently in its possession that falls into this category, but this disclosure is not yet complete.

The government will disclose such evidence in compliance with its continuing obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972) no later than one week before trial, when the witnesses for trial have been identified.

10. <u>Records Applicable to Sentencing</u>.

The defense seeks records affecting sentencing. The United States has provided full discovery regarding the facts of the case and the defendant's criminal record. Accordingly, the government has complied with this request, to the extent possible without further amplification of the nature of the desired records.

//

//

B. <u>PHYSICAL EVIDENCE WILL BE PRESERVED</u>.

The defense requests that all physical evidence in the case, including the pesticides, the defendant's personal effects, his cell phone and those belonging to his traveling companion, as well as the agents' notes be preserved. The United States has no objection to this request and has directed the case agents to preserve all such evidence.

## IV.
## CONCLUSION

The United States respectfully requests that the court deny the defendant's motions, to the extent they are opposed herein.